IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOMIKA THOMPSON, ET AL.,            *

     Plaintiffs,                              *

                          *

v.                                                *          Civil No. 24-1424-BAH

CHELSEA MANAGEMENT LLC, ET AL.,     *

     Defendants.                              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Pro se plaintiffs Tomika Thompson, Ronald Anderson, and Dre'Shawn Winston brought suit against Chelsea Management LLC ("Chelsea") and Ridge Gardens 2020 LLC ("Ridge Gardens") (collectively, "Defendants") alleging negligence and breach of contract. ECF 1. Pending before the Court is Defendants' Motion to Dismiss (the "Motion."). ECF 9. Plaintiffs filed an opposition[1], ECF 12, and Defendants filed a reply, ECF 14. All filings include memoranda of law, while ECF 9 and ECF 12 include exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' Motion is **GRANTED**.

I.    **BACKGROUND**

Plaintiffs originally filed their complaint in the Circuit Court for Baltimore County on April 7, 2024 and Defendants removed the case to this Court on May 15, 2024. *See* ECF 1. Plaintiffs'

---

[1] Plaintiffs styled their opposition as a "motion to vacate" Defendants' motion to dismiss. *See* ECF 12. The Court will construe this filing as a response in opposition and therefore dismiss the pending "motion to vacate" as moot.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

claims arise out of a lease agreement between the Parties; Plaintiffs Thompson and Anderson were tenants at an apartment complex apparently owned by Ridge Gardens, which Plaintiffs describe as "an entity of Chelsea Management," while Plaintiff Winston evidently served as the landlord and guarantor for Thompson and Anderson's apartment unit ("the Unit"). ECF 1-2, at 3–4 ¶¶ 2–4, 7 ¶ 19. Plaintiffs indicate that the rental contract ("the Agreement") was signed "on April 16, 2021." *Id.* at 4 ¶ 9.

Plaintiffs allege that on March 31, 2022, Ridge Gardens "intentionally inflicted" "emotional distress" on Thompson and Anderson by "ignoring complaints of secondhand smoke entering [the Unit] from the walls of the attached units and through the windows from residents who smoked on the patio/balcony area of the premises." ECF 1-2, at 4 ¶ 8. Further, Plaintiffs aver that, some time in April 2022, "defendants breached [the] rental contract . . . by allowing the possession and/or use of a Schedule[] I Controlled Substance (marijuana) on the premises which resulted in daily and nightly secondhand smoke into [the Unit]." *Id.* ¶ 9. According to Plaintiffs, "Defendants failed to keep the property reasonably safe and habitable" and thereby caused Thompson and Anderson to suffer "various emotional, mental, physical[,] and financial injuries," including "depression, anxiety, loss of enjoyment of life, abnormal sleeping patterns, coughing, difficulty breathing, and triggering of [] Anderson's asthma." *Id.* at 5 ¶¶ 10–11, 6–7 ¶ 16.

Per the complaint, Thompson and Anderson complained to Defendants for "two or more years" regarding the "secondhand smoke," but did not receive a response. ECF 1-2, at 5 ¶ 13. On March 7, 2024, Plaintiffs sent Defendants via certified mail a "notice" titled, "failure to protect and breach of lease/notice of the violation of our rights as tenants and intentional infliction of emotional distress." *Id.* at 6 ¶ 15 (cleaned up). After thirty days, Plaintiffs received no written or verbal response from Defendants, nor did Defendants "rectify[]" the secondhand smoke. *Id.*

Around this same time, Defendants sent Plaintiffs "two [] offers to renew" their lease for another term. ECF 1-2, at 5 ¶ 13. Plaintiffs indicate that a response to the offers was not due until April 30, 2024; however, at some point before that deadline, Defendants "issued Plaintiffs with a Termination of Lease letter without any known complaints and/or violations against the Plaintiffs." *Id.* When Plaintiffs asked for an explanation, Defendants "refused to provide a valid reason" for the termination of Plaintiffs' lease. *Id.* Plaintiffs attest that Thompson and Anderson "complied with all terms and conditions of the lease" throughout their tenancy. *Id.* at 8 ¶ 20.

In addition to problems with secondhand smoke, Plaintiffs also indicate that Defendants further "failed to provide fire extinguishers and/or automatic sprinkler system[s] to [the Unit], the units within [the] building and/or to the units in the building attached[.]" ECF 1-2, at 5 ¶ 14(a). They allege that this failure amounts to negligence, as do Defendants' alleged failures to conduct "any repairs to [the Unit] to prevent secondhand smoke" and to "address years of complaints regarding the torment and nuisance [of] the secondhand smoke[.]" (Count I of the complaint). *Id.* at 5–7 ¶¶ 12–17. Plaintiffs also bring a claim for breach of contract on the grounds that Defendants impermissibly allowed the possession and use of marijuana on the premises (Count II). *Id.* at 7–8 ¶¶ 18–23.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Because Plaintiffs bring this suit pro se, the Court must liberally construe their pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009), *aff'd*, 368 F. App'x 361 (4th Cir. 2010) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)).

4

III.    **ANALYSIS**

   A.    **Breach of Contract**

Plaintiffs argue that Defendants breached the Agreement "by allowing the possession and/or use of a Schedule[] I Controlled Substance (marijuana) on the premises." ECF 1-2, at 8 ¶ 21.    They note that Maryland's Cannabis Reform Act ("CRA") "permitted landlords and management companies to prohibit cannabis use" and that Defendants "did not provide any addendums to the lease . . . that permitted the possession and/or use of marijuana on the premises" after the CRA went into effect." *Id* ¶ 22.

"To state a claim for breach of contract, a plaintiff must allege sufficient factual content for a court to infer that (a) the defendant was under a contractual obligation owed to the plaintiff, which (b) the defendant breached." *John v. Essentia Ins. Co.*, 708 F. Supp. 3d 694, 699 (D. Md. 2023) (citing *Yousef v. Trusbank Sav., F.S.B.*, 568 A.2d 1134, 1137 (Md. App. 1990)).    "Maryland law does not require a plaintiff to cite a specific contractual provision to survive a motion to dismiss." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, Civ. No. ELH-16-3431, 2018 WL 1471682, at *9 (D. Md. Mar. 23, 2018).    "A plaintiff must still, however, allege facts 'to adequately show a sufficient writing exists.'" *Wells v. Pennrose Mgmt. Co.*, Civ. No. ADC-24-01746, 2024 WL 4476512, at *5 (D. Md. Oct. 11, 2024) (quoting *Student "B" v. Howard Cnty. Cmty. Coll.*, 512 F. Supp. 3d 610, 616 (D. Md. 2021)).    In construing contracts, including lease agreements, courts generally "give legal effect to all of [their] unambiguous provisions." *Seigneur v. Nat'l Fitness Inst. Inc.*, 752 A.2d 631, 635 (Md. App. 2000).

As noted, in evaluating a motion to dismiss, a court may review documents "attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro*, 930 F.3d at 248 (quoting *Philips*, 572 F.2d at 180). Typically, a contract is considered an integral document to a breach of contract action. *D.C. Water*

& *Sewer Auth. v. Samaha Assocs., PC*, 729 F. Supp. 3d 511, 517 (D. Md. 2024) (citing *Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 477 n.5 (D. Md. 2018)). Here, Defendants attach the rental contract as an attachment to the motion to dismiss, *see* ECF 9-2, and Plaintiffs do not dispute its authenticity. Accordingly, the Court will treat the lease agreement as integral to its evaluation of Plaintiffs' breach of contract claim.

Among other provisions relevant to the issues in this case, the Agreement establishes that if a resident "violate[s] any provision of this Lease or any rule or regulation herein imposed, then Management may treat such representation or Lease violation as a forfeiture under the terms of the Lease . . . . Under such circumstances, Management may re-enter and take possession of the Premises[.]" ECF 9-2, at 2 ¶ 9. These regulations include a prohibition on engaging in "the illegal manufacture, sale, distribution, dispensing, storage, use or possession of a 'controlled substance'" as defined by the Comprehensive Drug Abuse Prevention and Control Act, *see* 21 U.S.C. § 801 et seq. or under Maryland law, *see* Md. Code Ann., Crim. Law § 5-101 et seq. *Id.* at 6 ¶ 34. The Agreement also obligates residents to not "[p]ermit any unusual or objectionable odors to permeate or emanate from the Premises" and to refrain from "[c]arry[ing] or smok[ing] a lit tobacco product in any interior common area within any building within the rental community." *Id.* at 12 ¶¶ 27, 29. Further, the Agreement provides,

> Management shall not be liable for any injury, damage or loss to person or property caused unless the same is exclusively due to the omission, fault, negligence or other misconduct of management. Failure or delay in enforcing Lease covenants of other residents shall not be deemed an omission, fault, negligence or other misconduct on the part of the Management.

*Id.* at 7 ¶ 39.  Finally, the Agreement stipulates that "the only covenant of quiet enjoyment applicable to this tenancy, express or implied, is that established by Section 8-204 of the Real Property Article of the Annotated Code of Maryland" ("Real Property Code").[3]  *Id.* ¶ 45.

Plaintiffs' claim alleging that Defendants breached the rental contract by allowing the possession and use of marijuana appears to derive from paragraph 34 of the Agreement; as noted *supra*, paragraph 34 provides that the "use or possession of a 'controlled substance,'" as defined under either federal or Maryland state law, constitutes a "substantial[] and material" breach of the Agreement, "with such breach being grounds to terminate Resident's occupancy of the Premises." ECF 9-2, at 6.  In response, Defendants counter that Maryland law restrains them from summarily evicting marijuana users and that the Agreement "grants discretion to Defendants in deciding whether or not to enforce the anti-drug clause of the lease on a case by case basis."  ECF 9-1, at 10–12 (emphasis omitted).

The Court finds that Plaintiffs have not plead facts sufficient to meet the first element for a breach of contract claim, as they have not shown that Defendants were "under a contractual obligation *owed to the plaintiff*[.]"  *John*, 708 F. Supp. 3d at 699 (emphasis added).  No provision of the Agreement between Plaintiffs and Defendants obligates Defendants to take action with respect to other tenants; instead, the no-smoking and anti-drug clauses in the Agreement address only the contractual duties of signing resident, in this case, the Plaintiffs.[4]  *See* ECF 9-2, at 7 ¶ 34.

---

[3] Section 8-204 provides, *inter alia,* that a landlord "shall assure the tenant that the tenant, peaceably and quietly, may enter on the leased premises at the beginning of the term of any lease." Md. Code Ann., Real Prop. § 8-204(b).

[4] Moreover, the Agreement only provides Defendants the *option* to terminate the lease of a tenant in breach.  *See* ECF 9-2, at 2 ¶ 9 ("[I]f Resident . . . violate[s] any provision of this Lease or any rule or regulation herein imposed, then Management *may* treat such . . . violation as a forfeiture . . . . Under such circumstances, Management *may* re-enter and take possession of the

As the Agreement does not create a legal obligation on Defendants with respect to other tenants, so there cannot be a breach of that duty, and thus Plaintiffs cannot meet either element of a breach of contract claim.[5]

While Plaintiffs do not claim that they were third-party beneficiaries to the restrictions contained in other residents' leases, if they did seek to bring such a claim, it would also fail. Maryland law recognizes a third-party beneficiary to a contract only where "the contract was intended for his or her benefit and it clearly appears that the parties intended to recognize him or her as the primary party in interest and as privy to the promise"; "[i]t is not enough that the contract merely operates to an individual's benefit[.]" *CX Reinsurance Co. v. Levitas*, 207 F. Supp. 3d 566, 570 (D. Md. 2016), *aff'd sub nom. CX Reinsurance Co. Ltd. v. Loyal*, 691 F. App'x 130 (4th Cir. 2017) (quoting *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 212 (Md. 2012)). Plaintiffs point to no provision of the contract, nor any negotiations between the Parties, which would support the inference that they were intended third-party beneficiaries to the Agreement, nor does the text of the Agreement itself bear out such a conclusion. Certainly, the no-smoking, no-drugs clauses in the Agreement would operate to the benefit of other residents of the apartment complex, Plaintiffs included, but absent clear evidence that such a benefit was the express intention

---

Premises . . . .") (emphasis added).  The Agreement does not *require* Defendants to take any particular action.

[5] Relatedly, Defendants argue that the indemnification provision in the Agreement "exempts [them] from any liability associated with the failure or delay in enforcing a lease covenant[] against other residents." ECF 9-1, at 2. Because the Court has already determined that no provision of the Agreement affirmatively creates such obligation to Plaintiffs on the part of Defendants, it will not address Defendants' arguments regarding the indemnification clause. However, the Court notes that, "[u]nder Maryland law, in the absence of legislation to the contrary, a public policy in favor of freedom to contract generally supports the validity of exculpatory clauses." *Nerenhausen v. Washco Mgmt. Corp.*, Civ. No. JKB-15-1313, 2017 WL 1398267, at *3 (D. Md. Apr. 18, 2017) (citing *Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994)).

of the parties to the rental contracts, Plaintiffs may not be considered third-party beneficiaries with standing to enforce the lease.

Construing the complaint liberally, the Court determines that Plaintiffs may be attempting to bring a claim for breach of the covenant of quiet enjoyment. Under Maryland law, "[a]ll leases imply a covenant of quiet enjoyment under which the tenant is entitled to the quiet enjoyment of the premises during the lease term." *Wright v. Willow Lake Apartments (MD) Owner, LLC,* 648 F. Supp. 3d 647 (D. Md. 2023) (citing *Bocchini v. Gorn Mgmt. Co.*, 515 A.2d 1179, 1182 (Md. App. 1986)). Maryland courts treat the right of quiet enjoyment as a "contractual right" and the "'duty' to honor and enforce the covenant" as a contractual duty. *Bocchini*, 515 A.2d at 1187. "In Maryland, generally, in the absence of an actual or constructive eviction, a tenant will have a claim for damages caused by conduct by the landlord that strikes at the essence of its obligations under the lease." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 266 (Md. App. 2009). "A quiet enjoyment claim may exist if, during the lease period, the landlord, or someone whose conduct is attributable to the landlord, interferes with a permissible use of the leased property by the tenant." *Wright*, 648 F. Supp. 3d at 667 (citing *Bocchini*, 515 A.2d at 1184). "An individual's conduct may be attributed to the landlord if the conduct occurred on the landlord's premises and the landlord could legally control that conduct." *Id.* (citing *Bocchini*, 515 A.2d at 1184). If the landlord "is in a position to correct or terminate" the conduct of a tenant, they may not "escape [their] obligation under a covenant of quiet enjoyment by steadfastly refusing to exercise [their] authority." *Bocchini*, 515 A.2d at 1185.

However, both statutorily and at common law, Maryland has long recognized that the covenant of quiet enjoyment may be waived. *See Baugher v. Wilkins*, 16 Md. 35, 44–45 (Md. 1860) ("It is undoubtedly true, that a lessee . . . is entitled to the quiet enjoyment of [the premises]

during his term, and there is an implied covenant to that effect on the part of the lessor in the case where none is expressed, *if the contrary be not stated*.") (emphasis added); Md. Code Ann., Real Prop. § 2-115 ("[I]n a lease, *unless the lease provides otherwise*, there is an implied covenant by the lessor that the lessee shall quietly enjoy the land.") (emphasis added). Here, as stated above, the Agreement explicitly limits the covenant of quiet enjoyment to the scope articulated by section 8-204 of the Real Property Code, which obligates landlords to "assure the tenant that the tenant, peaceably and quietly, may enter on the leased premises at the beginning of the term of any lease." Md. Code Ann., Real Prop. § 8-204(b). "When the language of a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, 560 F. Supp. 3d 956, 961–62 (D. Md. 2021) (quoting *Mitchell v. AARP Life Ins. Program, New York Life Ins. Co.*, 779 A.2d 1061, 1069 (2001) (internal citation omitted)). Plaintiffs have not raised any argument that the limitation clause is otherwise invalid. In the absence of such, the Court must conclude that the Agreement validly limits the scope of the covenant of quiet enjoyment to possession at the beginning of the lease and so does not encompass a potential claim arising from Plaintiffs' complaints about secondhand smoke.

**B.    Negligence**

Plaintiffs argue that Defendants were negligent in failing to "provide fire extinguishers and/or automatic sprinkler system[s]," failing to "provide any repairs to unit to prevent secondhand smoke and/or possible fire caused from smoking residents," and failing to "address years of complaints regarding the torment and nuisance" caused by the secondhand smoke. ECF 1-2, at 5–6 ¶¶ 14(a)–(c).

To establish a claim of negligence under Maryland law, a plaintiff must show "(1) that the defendant was under a duty to protect the plaintiff from injury; (2) that the defendant breached that

duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Wright*, 648 F. Supp. 3d at 665 (citing *Wash. Metro. Area Transit Auth. v. Seymour*, 874 A.2d 973, 976 (Md. 2005)).

Here, Defendants' alleged failure to provide fire extinguishers and sprinkler systems cannot serve as the basis for Plaintiffs' negligence claim, not least because Plaintiffs have not alleged that any injury resulted, as is required to establish a claim for negligence under Maryland law. Moreover, as to Plaintiffs' argument that Defendants were negligent in failing to make repairs to prevent secondhand smoke from entering the Unit, it is true that Maryland law recognizes a landlord's duty to repair defective conditions in certain circumstances. *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 826 A.2d 443, 454 (Md. 2003). "To establish a landlord's duty to repair a defective condition on the premises, a plaintiff must establish . . . [the landlord's] control of the condition, knowledge of the condition, and a reasonable foreseeability of the harm." *Ogunde v. Johnson*, Civ. No. 2141, 2019 WL 290107, at \*5 (Md. App. Jan 8, 2019) (citing *Hemmings*, 826 A.2d at 454). Here, however, Plaintiffs do not allege that Defendants knew, or even should have known, that the Unit was in need of repair to prevent secondhand smoke. In the complaint, Plaintiffs attest that they made multiple complaints of secondhand smoke, but they do not offer any facts that suggest that their Unit was at all defective or in need of repair. *See, e.g.,* ECF 1-2, at 4 ¶¶ 8–9. Without facts that support that Defendants knew of the defective conditions in the Unit, or indeed facts that detail how the Unit was defective at all, Plaintiffs cannot claim Defendants negligently failed to conduct repairs.

Inasmuch as Plaintiffs base their negligence claim on Defendants' failure to address Plaintiffs' complaints regarding the secondhand smoke, Defendants respond that they had no "tort duty to control" the behavior of other residents because they "no longer control those apartment

11

units." ECF 9-1, at 8. They also point to the exculpatory language in the Agreement providing that "[f]ailure or delay in enforcing Lease covenants of other residents shall not be deemed an omission, fault, negligence or other misconduct on the part of the Management." *Id.* at 5 (quoting ECF 9-2, at 7 ¶ 39). Finally, Defendants contend that Plaintiffs' negligence claim is "based on the incorrect theory that the 'Illegal Drugs' clause of the lease gave Defendants the power to summarily evict marijuana users," as Defendants are prohibited under Maryland law from engaging in such summary evictions. *Id.* at 6 (citing *Chateau Foghorn LP v. Hosford*, 168 A.3d 824, 857 (Md. 2017)).

The Court focuses on the second of Defendants' arguments, as a valid exculpatory clause would bar Plaintiffs' negligence claim entirely. "Under Maryland law, in the absence of legislation to the contrary, a public policy in favor of freedom to contract generally supports the validity of exculpatory clauses." *Nerenhausen*, 2017 WL 1398267, at *3 (citing *Wolf*, 644 A.2d at 525). Of relevance to the case at hand, Maryland statutorily limits the effects of exculpatory clauses. *See* Md. Code Ann., Real Prop. § 8-105. Section 8-105 holds that if a provision of any lease operates to "indemnify the landlord, hold the landlord harmless, or preclude or exonerate the landlord from any liability to tenant . . . for any injury, loss, damage, or liability," such a clause is "considered to be against public policy and void," unless the injury occurred on premises "within the exclusive control of the tenant." *Id.* Thus, "where the area 'on or about' which the landlord was negligent is 'within the exclusive control of the tenant[,]' an indemnification provision is not rendered void by operation of § 8-105." *Prince Philip P'ship v. Cutlip*, 582 A.2d 992, 994 (Md. 1990) (quoting *Shell Oil Co. v. Ryckman*, 403 A.2d 379, 380 n.1 (Md. App. 1979)). Maryland courts have clarified that "a tenant may have exclusive control of premises even though the landlord 'reserve[s] under the lease the right to enter the premises at any time to inspect or repair.'" *Cianci v. Boyd*, Civ. No.

12

753, 2016 WL 6664809, at *18 (Md. App. Nov. 7, 2016) (quoting *Prince Philip P'ship*, 582 A.2d at 994).

Here, Plaintiffs' complaint does not offer sufficient facts for the Court to draw the reasonable inference that even some of the smoking occurred in areas under the control of management, or rather, outside the area of exclusive tenant control.  Plaintiffs allege only that the smoke entered the Unit "from the walls of the attached units" or else "from residents who smoked on the patio/balcony area" of the units.  ECF 1-2, at 4 ¶ 8.  From the face of the complaint, then, the smoking appears to have occurred in individual apartments, not in common areas.[6]  These facts may be analogized to *Nerenhausen v. Washco*, wherein Judge Bredar determined that because a rental lease gave "[p]laintiffs the right to occupy the townhouse as a private residence," and an alleged injury occurred "within the dwelling [a plaintiff] rented from [d]efendants," so the apartment was "in [p]laintiffs' exclusive control at the time of [the] injury," notwithstanding the presence of a provision in the lease preserving management's right of entry for a "reasonable business purpose."[7]  2017 WL 1398267, at *4.  As such, Judge Bredar found, "Maryland's limitation on indemnification provisions in leases [did] not void the exculpatory clause" as applied to the facts of the case.  *Id.*  In the instant case, the Court determines, following the reasoning in

---

[6] As an attachment to their response, Plaintiffs include copies of email correspondence with management regarding their complaints about the smoking.  Because the emails are not "integral" to the complaint, *see Fusaro*, 930 F.3d at 248, and are therefore not properly considered at the motion to dismiss stage, the Court does not rely on these documents in its analysis.  However, even if the Court had evaluated the emails, the outcome would remain the same, as a review of Plaintiffs' attachment appears to support the conclusion that the smoke came from the personal areas of other residents.

[7] The Agreement in this case contains a similar provision. *See* ECF 9-2, at 3 ¶ 11 ("Management has the right to enter the Premises at any time by master key, duplicate key or, if necessary, by force, to inspect the Premises, to make repairs/alterations in the Premises or elsewhere on Management's property, to enforce any provision of this Lease or to show the Premises to prospective future residents or purchasers without being liable to prosecution therefore, or damages by reason thereof.").

*Nerenhausen*, that the individual units should be considered as "within the exclusive control" of individual tenants and therefore the indemnification clause in the Agreement is valid under Maryland law, as applied to Plaintiffs' negligence claim. The indemnification clause thus bars Plaintiffs' suit, and their negligence claim is dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs' motion to vacate, ECF 12, is construed as a response to Defendants' motion and is therefore DENIED as moot.

A separate implementing Order will issue.

Dated: <u>February 26, 2025</u>                                      <u>          /s/          </u>
                                                                                       Brendan A. Hurson
                                                                                       United States District Judge